**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| ANGELA KAPPHAHN, DE'AJALA LE'SHAY HARRIS, and LASHIYA STEWART, *each individually and on behalf of a class of all others similarly situated*, | Civ. No. 25-2409 (JRT/DLM) |
| Plaintiffs, | |
| v. | |
| BRIDGECREST ACCEPTANCE CORPORATION; WELLS FARGO BANK, N.A.; R.I. LIMITED LIABILITY COMPANY *d/b/a* RECOVERY INDUSTRY; and JOHN DOES FINANCE COMPANIES 1-50, | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS** |
| Defendants. | |

Carter B. Lyons and Thomas J. Lyons, Jr., **CONSUMER JUSTICE CENTER, P.A.**, 367 Commerce Court, Vadnais Heights, MN 55127, for Plaintiffs.

Megan L. Tilton, Michael S. Poncin, Patrick D. Newman, **BASSFORD REMELE**, 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402, for Defendants Bridgecrest Acceptance Corporation and R.I. Limited Liability Company *d/b/a* Recovery Industry.

Jason D. Evans, Joshua D. Davey, Lauren Geiser, and Ryan E. Dornberger, **TROUTMAN PEPPER LOCKE LLP**, 301 South College Street, Suite 3400, Charlotte, NC 28202, for Defendant Wells Fargo Bank, N.A.

Plaintiffs Angela Kapphahn, De'Ajala Le'Shay Harris, and Lashiya Stewart initiated this putative class action against Defendants Bridgecrest Acceptance Corporation ("Bridgecrest"), Wells Fargo Bank, N.A. ("Wells Fargo"), R.I. Limited Liability Company d/b/a Recovery Industry ("Recovery"), and unnamed finance companies (collectively,

"Defendants"), alleging that Defendants unlawfully repossessed their automobiles by using GPS tracking devices to locate and seize their vehicles.  Defendant Bridgecrest moves to compel arbitration and to stay proceedings as to Kapphahn's claims (Docket No. 39); Defendant Recovery moves to compel arbitration and to stay proceedings as to the claims brought by Kapphahn (Docket No. 49) and Harris (Docket No. 44).  After careful consideration, the Court will grant Defendants' motions to compel arbitration.  The Court will, therefore, also stay proceedings as to Kapphahn and Harris's claims against Bridgecrest and Recovery.[1]

**BACKGROUND**

I.      **FACTUAL BACKGROUND**

A.      **Recovery's Use of GPS "Pucks" in Self-Help Repossessions**

In general, after a debtor defaults on an automobile loan, the lender may enforce its security interest by repossessing the vehicle that serves as collateral for the loan. (Compl. ¶¶ 3–4, June 10, 2025, Docket No. 1.)  The lender typically hires a third party—

---

[1] The claims of the third named Plaintiff, Stewart, are not subject to Defendants' motions to compel arbitration.  Plaintiffs allege that Wells Fargo and Recovery unlawfully repossessed Plaintiff Stewart's vehicle using a puck after she defaulted on her automobile loan.  (Compl. ¶¶ 39–42, 47, 76–80 June 10, 2025, Docket No. 1.)  On February 12, 2026, Plaintiffs stipulated and agreed to dismiss their claims against Wells Fargo with prejudice, and the Court approved the stipulation.  (Docket Nos. 92 & 94.)  Accordingly, the Court will not address Plaintiffs' claims against Wells Fargo or the facts relevant to Stewart's claims.

like Defendant Recovery, a professional recovery company—to repossess the vehicle. (*Id.* ¶ 5.)

Plaintiffs allege that Recovery uses "spotters," Recovery employees who drive vehicles outfitted with cameras, to help locate vehicles subject to active repossession orders. (*Id.* ¶¶ 49–52.) Once the spotter locates a vehicle, they call a tow truck driver, typically another Recovery employee, who then takes possession of the vehicle. (*Id.* ¶¶ 53–54.)

On occasion, spotters will locate a vehicle eligible for repossession when a tow truck driver is not immediately available. (*Id.* ¶ 55.) In those situations, Plaintiffs allege that Recovery's spotters attach a magnetic external GPS tracking device—also known as a "puck"—to the vehicle without the owner's knowledge or consent, enabling Recovery to track the vehicle's movements and quickly pinpoint its location once a tow truck is available. (*Id.* ¶ 56.) Plaintiffs allege that Recovery's repossession practices are unlawful. (*Id.* ¶¶ 57–59.)

### B.    The Relevant Named Plaintiffs

Plaintiffs Kapphahn, Harris, and Stewart brought this putative class action against Defendants, alleging that Recovery's use of external GPS pucks to locate and repossess vehicles after consumer debtors defaulted on their automobile loans violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, as well as Minnesota statute and common law. (Compl. ¶¶ 1, 102–135.) Although the Complaint names three Plaintiffs, only Kapphahn and Harris are relevant to Defendants' motions to compel arbitration and

stay proceedings. The Court will therefore address only the facts relevant to Kapphahn and Harris's claims.

### 1. Kapphahn

In June 2024, Kapphahn secured a loan and purchased a 2019 Ram 1500 Crew Cab from Carvana, LLC ("Carvana"). (*Id.* ¶ 18.) Kapphahn and Carvana executed a "Retail Installment Contract and Security Agreement" ("RIC"), which granted Carvana a security interest in the vehicle. (*Id.* ¶¶ 19–20.) Kapphahn also executed a Retail Purchase Agreement ("RPA"). (Second Decl. of Susan Carrillo-Ramirez ("Second Carillo-Ramirez Decl.") ¶ 6, Ex. B, Sept. 29, 2025, Docket No. 68.) Kapphahn executed the RIC and RPA on June 1, 2024. (*Id.*; Decl. of Susan Carrillo-Ramirez ("Carrillo-Ramirez Decl.") ¶ 7, Ex. A, Aug. 18, 2025, Docket No. 42.)

Kapphahn's RIC is five pages long. (*See* Carrillo-Ramirez Decl. ¶ 7, Ex. A at 2–6.)[2] Among other terms, the RIC sets forth the vehicle's price, the amount financed, the interest rate, the "Additional Terms of the Sales Agreement," and the security agreement. (*Id.*) The RIC states that the term "Contract" only "refers to this Retail Installment Contract and Security Agreement." (*Id.* at 4.) The RIC defines "we," "us," and "our" as

---

[2] Kapphahn's agreement was also filed in support of Recovery's motion to compel arbitration. (*See* Decl. of Susan Carrillo-Ramirez ¶ 7, Ex. A, Aug. 18, 2025, Docket No. 52.) For convenience and clarity, the Court will cite to the agreement at Docket No. 42, filed in support of Bridgecrest's motion to compel arbitration.

the "Seller [Carvana] and any entity to which it may transfer this Contract" such as

Bridgecrest.  (*Id*.)

Kapphahn also executed an Arbitration Agreement on May 29, 2024, three days

before she executed the RIC and the RPA.  (*Id.* at 7–13.)  Section 2 of the Arbitration

Agreement provides: "Except as stated below in Section 2.1, You or We can choose to

demand that a Claim shall be resolved through binding and final arbitration instead of

through court proceedings, and You and We promise to accept that demand."  (*Id.* at 9.)

Section 1.2 of Arbitration Agreement defines "Claims" as having the "broadest reasonable

meaning," and includes disputes concerning "the collection of amounts owed by You, or

the repossession of the Vehicle."[3]  (*Id.* at 8.)  Section 1.5 of the Arbitration Agreement

defines "Us/We/Our" to mean:

---

[3] Section 1.2 defines "Claims" as follows:

> "Claims" has the broadest reasonable meaning, and means any
> claims, counterclaims, crossclaims, third-party claims, disputes, or
> controversies between You and Us, whether on an individual or a
> class basis, whether arising in contract, tort, equity, pursuant to
> statute, regulation, ordinance, or otherwise, relating to or arising
> from any of the following:
>
> (a) the Vehicle, its features, mileage, condition, or accident history;
> (b) advertisements, promotions, or oral or written statements
> regarding the Vehicle or the Contracts;
> (c) registration of, title to, or liens on the Vehicle;
> (d) delivery or pick-up of the Vehicle;
> (e) Your purchase, sale, or trade-in of the Vehicle;
> (f) the Contracts, and duties or relationships arising therefrom;
> (g) financing terms, credit applications, or credit reporting;
> (h) origination or servicing of the Contracts;

> Carvana, LLC, any purchaser, assignee, or loan servicer of the Contracts, including, but not limited to, Bridgecrest Acceptance Corporation, Bridgecrest Credit Company, LLC, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them. "Us/We/Our" also means any warranty servicer or other party providing products or services to the Vehicle in connection with or incidental to the Contracts, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them.

(*Id.* at 8.)

Carvana later assigned the RIC to Bridgecrest. (Compl. ¶ 21.) Kapphahn defaulted, and on August 4, 2024, Recovery repossessed Kapphahn's vehicle on Bridgecrest's behalf. (*Id.* ¶¶ 26, 60.) Recovery allegedly used a puck to locate her vehicle. (*Id.* ¶¶ 61–64.)

### 2. Harris

In June 2021, Harris obtained a loan to purchase a 2018 Ford Escape from Cities Auto and Finance. (*Id.* ¶¶ 29–30.) As part of the transaction, Harris and Cities Auto and Finance executed a RIC and granted Cities Auto and Finance a security interest in the

---

> (i) any goods and services incidental to the Contracts or the Vehicle, such as warranty service, extended vehicle service, or insurance coverage;
> (j) **the collection of amounts owed by You, or the repossession of the Vehicle**;
> (k) the rescission or termination of the Contracts; or
> (l) the collection or disclosure of Your personal information.
>
> The definition of "Claims" in this Agreement is not intended to determine whether a particular dispute includes a single Claim or multiple Claims.

(Carrillo-Ramirez Decl. ¶ 7, Ex. A at 8 (emphasis added).)

vehicle. (*Id.* ¶ 31.) Like Kapphahn's, Harris's RIC spans five pages. (Decl. of Carryn Walker ("Walker Decl.") ¶ 6, Ex. A at 2–6, Aug. 18, 2025, Docket No. 47.) In addition to disclosing the vehicle's price, the amount financed, and other terms, the RIC contains an "Arbitration Clause." (*Id.* at 6.) In relevant part, the clause provides:

## ARBITRATION CLAUSE

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and Us. "You" and "Your" means each Buyer named above.

**Your Right to Reject:** If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.

A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

(*Id.*) Page one of the RIC required an acknowledgement (that was initialed by Harris) that the RIC contained an Arbitration Clause and that "[b]y initialing" the buyer confirms they have "read, understand and agree to the terms and conditions of the Arbitration Clause." (*Id.* at 2.) Moreover, at the bottom of page one, right above another location for the buyer's initials, the RIC also states: "THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE **ARBITRATION CLAUSE** SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTACT ARE PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE." (*Id.* (emphasis in original).)

Cities Auto and Finance subsequently assigned the RIC to Credit Acceptance Corporation ("CAC"). (Compl. ¶ 32; Walker Decl. ¶¶ 2, 6.) Harris defaulted, and Recovery repossessed her vehicle on July 7, 2023, after allegedly locating her vehicle using a puck. (Compl. ¶¶ 37, 68–72.)

## II.    PROCEDURAL HISTORY

Plaintiffs filed a Class Action Complaint on June 10, 2025, asserting that Defendants' self-help repossession methods violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Minnesota statutory and common law.[4] (Compl. ¶¶ 1, 102–135.) Defendant Bridgecrest moves to compel arbitration and stay proceedings as to Kapphahn's claims, pursuant to the Federal Arbitration Act. (Def. Bridgecrest's Mot. to Compel Arbitration and Stay Proceedings, Aug. 18, 2025, Docket No. 39.) Defendant Recovery moves to compel arbitration and stay proceedings as to the claims brought by Kapphahn and Harris, also pursuant to the Federal Arbitration Act.

---

[4] Kapphahn alleges four causes of action: (1) violation of FDCPA, 15 U.S.C. § 1692f(6) against Recovery (Count I); (2) wrongful repossession under Minn. Stat. § 336.9-609 against Bridgecrest and Recovery (Count II); (3) conversion against Bridgecrest and Recovery (Count V); and intrusion upon seclusion against Recovery (Count VIII). (Compl. ¶¶ 102–110, 119–122, 131–135.)

Harris alleges three causes of action: (1) wrongful repossession under Minn. Stat. § 336.9-609 against Recovery (Count III); (2) conversion against Recovery (Count VI); and intrusion upon seclusion against Recovery (Count VIII). (*Id.* ¶¶ 111–114, 123–126, 131–135.)

Stewart alleges three causes of action: (1) wrongful repossession under Minn. Stat. § 336.9-609 against Recovery and Wells Fargo (Count IV); (2) conversion against Recovery and Wells Fargo (Count VII); and intrusion upon seclusion against Recovery (Count VIII). (*Id.* ¶¶ 115–118, 127–135.)

-8-

(Def. Recovery's Mots. to Compel Arbitration and Stay Proceedings, Aug. 18, 2025, Docket Nos. 44 & 49.)  Stewart's claims are not subject to Defendants' motions to compel arbitration.

## DISCUSSION

### I.   STANDARD OF REVIEW

A party who believes that a dispute is subject to arbitration may move for an order compelling arbitration and staying the proceedings.  9 U.S.C. § 3.  On a motion to compel arbitration and stay proceedings under the Federal Arbitration Act, the Court does not determine the merits of the substantive issues, but simply whether the parties have agreed to submit a particular grievance to arbitration.  *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008).  When considering such a motion, the Court is therefore limited to assessing: (1) whether a valid agreement to arbitrate exists between the parties and (2) whether the specific dispute is within the scope of that agreement.  *Pro Tech Indus. Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).  In conducting this inquiry, the Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter."  *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999).

An arbitration agreement should be construed liberally, "with any doubts resolved in favor of arbitration."  *MedCam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005).  The party seeking to avoid arbitration bears the burden of proving that the claims at issue are

not suitable for arbitration.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

## II.    KAPPHAHN'S CLAIMS

Defendants Bridgecrest and Recovery filed separate motions to compel arbitration and stay proceedings as to Kapphahn's claims.  (Docket Nos. 39 & 49.)  Plaintiffs do not dispute that the Kapphahn signed the RIC and the Arbitration Agreement.  Nor do Plaintiffs dispute that Bridgecrest is covered by the plain language of the Arbitration Agreement.  Rather, Plaintiffs argue that (1) the RIC violates the Minnesota Motor Vehicle Retail Installment Sales Act ("MMVRISA"), Minn. Stat. § 53C.01 *et seq*., and therefore the Arbitration Agreement cannot be enforced by Bridgecrest or Recovery; and (2) Recovery is not covered by the Arbitration Agreement, and Recovery cannot enforce the Arbitration Agreement as a nonsignatory.  The Court will address each argument in turn.

### A.    Minnesota Motor Vehicle Retail Installment Sales Act

MMVRISA provides that "[e]very retail installment contract shall be in writing, **shall contain all the agreements of the parties**, shall be signed by the retail buyer and seller, and a copy signed by the retail buyer shall be furnished to such retail buyer at the time the retail buyer executes the contract."  Minn. Stat. § 53C.08, subd. 1(a) (emphasis added).  Under this statute, all retail installment contracts must include:

> (1) the cash sale price of the motor vehicle . . . ;
>
> (2) the total amount of the retail buyer's down payment . . . ;
>
> (3) the difference between clauses (1) and (2);

(4) the amount, if any, included in the transaction but not included in clause (1) . . . ;

(5) principal balance, which is the sum of clauses (3) and (4);

(6) the amount of the finance charge;

(7) the total of payments payable by the retail buyer to the retail seller and the number of installment payments required and the amount of each installment expressed in dollars or percentages, and date of each payment necessary finally to pay the total of payments, which is the sum of clauses (5) and (6).

*Id.*, subd. 2.  "The plain purpose of the MMVRISA is to require disclosure to consumers of the cost of credit extended to them, including sale price, amount of down payment, insurance charges, and finance charges."  *Scott v. Forest Lake Chrysler-Plymouth-Dodge*, 611 N.W.2d 346, 351 (Minn. 2000) (quoting *Sharlow v. Wally McCarthy Pontiac-GMC Trucks-Hyundai, Inc.*, Civ. No. 97-20, 1998 WL 35249294, at *1 (D. Minn. Sept. 28, 1998)). Moreover, "'[t]he 'agreement of the parties' clause serves to prohibit dealers from relying on separate agreements containing additional or contradictory financing terms."  *Id.* (quoting *Sharlow*, 1998 WL 35249294, at *1).

Plaintiffs first argue that the Arbitration Agreement Kapphahn signed should not be enforced because the Arbitration Agreement was not part of Kapphahn's RIC and thus violates the MMVRISA.  In support of their argument, Plaintiff relies on *Jennings v. Carvana LLC*, No. 22-2948, 2024 WL 1209746 (3d. Cir. Mar. 21, 2024).

In *Jennings*, the Third Circuit considered whether an arbitration agreement was enforceable under Pennsylvania law when it was executed at same time as the RPA and

RIC. *Id.* at *1.  The Pennsylvania Motor Vehicle Sales Finance Act (PMVSFA) requires an installment sale contract to "contain all of the agreements between a buyer and an installment seller relating to the installment sale of the motor vehicle sold[.]"  *Id.* at *2 (quoting Pa. Cons. Stat. § 6221 (a)(2)).  The *Jennings* plaintiffs argued that the arbitration agreement was unenforceable because it was not part of the RIC, and thus in violation of the one-document rule created by the PMVSFA.  *Id.*  The Third Circuit agreed, holding that "no other 'agreement' is enforceable as part of the sale unless it is included in the [RIC]."  *Id.*  The Third Circuit determined that the arbitration agreement was unenforceable because it was executed separately from the RIC.  *Id.*  In doing so, the Court also rejected the defendant's argument that the RPA, the RIC, and the arbitration agreement be deemed a single contract because they were related to a single transaction and were executed on the same day.  *Id.* at *3.  The Court also rejected defendant's argument that arbitration agreement was valid because the statute "only concerned . . . financing terms."  *Id.*

Plaintiffs' reliance on *Jennings* is misplaced.  First, the case is not binding authority.  Second, the Minnesota Supreme Court interprets the MMVRISA to apply more narrowly than the Third Circuit's construction of the Pennsylvania statute.  *See Scott*, 611 N.W.2d at 351.  In *Scott*, the Minnesota Supreme Court held that the defendants did not violate MMVRISA's "shall contain all the agreements of the parties" requirement when a retail installment contract did not include a conditional delivery agreement.  *Id.* at 352.  The

court, relying on its own precedent, emphasized that MMVRISA "only requires that the buyer be informed of the *credit* terms[.]"  *Id.* at 352.  The court also rejected the buyer's argument that separate agreements were "subsumed into the retail installment contract" and thus in violation of MMVRISA.  *Id.*

Reading *Scott* together with other cases interpreting MMVRISA, the Court concludes that MMVRISA is not violated when an arbitration agreement is not included with a RIC so long as the agreement does not contain additional or contradictory **credit** terms.  *See, e.g.*, *Golden v. Prosser*, Civ. No. 13-3553, 2014 WL 4626489, at *4 (D. Minn. Sept. 15, 2014) ("The [MMVRISA] is not designed to serve as a statutory integration clause, but rather to ensure that buyers are not surprised by financing costs not set forth in the installment contract."); *Sharlow*, 1998 WL 35249294, at *1 (holding that MMVRISA was not violated because the separate financing addendum at issue did not change any contract terms contained in the RIC); *Gibbs-Bolender v. CAG Acceptance, LLC*, Civ. No. 14-01684, 2015 WL 685217, at *6 (D. Nev. Feb. 18, 2015) (acknowledging that the Minnesota Supreme Court, unlike other jurisdictions, interprets its motor vehicle retail installment sales statute to allow parties to enter into separate agreements—including arbitration agreements—so long as all credit terms appear in a single document).

Because arbitration is not a financing term (and thus does not contradict the financing terms contained in the RIC), the Arbitration Agreement does not run afoul of MMVRISA's "shall contain all the agreements of the parties" requirement of Minn. Stat.

§ 53C.08, subd. 1(a). *See Gibbs-Bolender*, 2015 WL 685217, at *6 (noting arbitration clauses do not concern the "cost of credit"). Accordingly, the MMVRISA does not render Kapphahn's arbitration agreement unenforceable.

The record also supports the conclusion that Kapphahn's arbitration agreement is enforceable. Under Minnesota law, agreements that concern the same transaction must be construed together. *See Enestvedt v. Enestvedt*, No. A24-1015, 2025 WL 1429867, at *4 (Minn. Ct. App. May 19, 2025) ("Because the purchase agreement and option agreement refer to each other, relate to the same transaction, and were executed at or about the same time, we conclude that they are part of the same contract and must be construed together.") The parties executed the Arbitration Agreement three days before the RIC and RPA,[5] and Section 1.3 of the Arbitration Agreement incorporated the RIC and RPA by reference. (*See* Carrillo-Ramirez Decl. ¶ 7, Ex. A at 2–13.) The Arbitration Agreement stated that it was "part of the Contracts, defined below." (*Id.* at 7.) Section 1.3 defined "Contracts" to mean the RPA, the RIC, and other specific agreements. (*Id.* at 8.) In addition, the RPA contained an arbitration clause that incorporated by reference any arbitration provision contained in the RIC. (Second Carillo-Ramirez Decl. ¶ 6, Ex. B at 7.) Because the Arbitration Agreement, RIC, and RPA reference each other and concern

---

[5] The Court is troubled that Kapphahn signed the Arbitration Agreement **three days** before executing the RIC and the RPA, a sequence that suggest possible impropriety or questionable business practices. It seems highly unusual that an arbitration agreement is signed before the parties know the contours of the contract.

the sale and financing of Kapphahn's vehicle, the agreements form a single agreement and should be construed together.

The Court concludes that the Arbitration Agreement does not violate MMVRISA and is not invalid.  The Court further finds—and Plaintiffs do not dispute—that the plain language of the Arbitration Agreement covers Kapphahn's claims against Bridgecrest because Bridgecrest is specifically referenced in Section 1.5 of the Arbitration Agreement. (Carrillo-Ramirez Decl. ¶ 7, Ex. A at 8.)  The Court will, therefore, grant Bridgecrest's motion to compel arbitration and stay the proceedings.

### B.      Applicability of Arbitration Agreement to Recovery

Having concluded that the Arbitration Agreement does not violate MMVRISA, the Court will consider whether **Recovery** may compel arbitration with respect to Kapphahn's claims.  Plaintiffs argue that Recovery's motion to compel arbitration should be denied because the Arbitration Agreement does not cover claims against Recovery.  It is undisputed that Recovery did not sign the Arbitration Agreement, RIC, or RPA.  To determine whether Recovery can nevertheless compel arbitration, the Court must first determine whether Recovery is covered by the contractual language of the RIC and Arbitration Agreement.

Section 1.2 of the Arbitration Agreement states that the Agreements applies to "any claims, counterclaims, crossclaims, third-party claims, disputes, or controversies between You [Kapphahn] and Us, whether on an individual or a class basis, whether arising in contract, tort, equity, pursuant to statute, regulation, ordinance, or otherwise,

relating to or arising from . . . the collection of amounts owed by You [Kapphahn], or the repossession of the Vehicle[.]" (*Id.* at 8.) Section 1.5 of the Arbitration Agreement defines "Us/We/Our" to mean:

> Carvana, LLC, any purchaser, assignee, or loan servicer of the Contracts, including, but not limited to, Bridgecrest Acceptance Corporation, Bridgecrest Credit Company, LLC, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them. "Us/We/Our" also means any warranty servicer or other party providing products or services to the Vehicle in connection with or incidental to the Contracts, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them.

(*Id.* at 8.)

The Court concludes that Recovery is not covered by the language of the Arbitration Agreement. As discussed above, because the Arbitration Agreement, RIC, and RPA refer to one another and all relate to the sale and financing of Kapphahn's vehicle, they constitute a single integrated agreement and should be construed together. *See Enestvedt*, 2025 WL 1429867, at *4. However, neither the Arbitration Agreement, RPA, nor RIC make any reference to Bridgecrest's agents, such as Recovery. Nor is Recovery covered by the provision extending contractual rights to "any warranty servicer or other party providing products or services to the Vehicle" (*see id.*) because Recovery does not provide services to the vehicle but merely assists with repossession. Recovery is therefore not covered by the terms of Kapphahn's Arbitration Agreement.

But the Court's analysis does not end there.  Although Recovery cannot compel arbitration by the terms of the Arbitration Agreement or the RIC, Recovery may be entitled to compel arbitration as a nonsignatory.

State law governs whether nonsignatories may enforce arbitration clauses.  *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 (8th Cir. 2010).  The parties do not dispute that Minnesota law applies here.  Generally, under Minnesota law, "arbitration clauses are contractual and cannot be enforced by persons who are not parties to the contract."  *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 356 (Minn. 2003).  But the Minnesota Supreme Court has acknowledged that "[f]ederal cases have set out at least three principles on which a nonsignatory to a contract can compel arbitration: equitable estoppel, agency, and third-party beneficiary."  *Id.* (citation omitted).  "Minnesota appears to follow federal law regarding these exceptions."  *In re Wholesale Grocery Prods. Antitrust Litig.*, 97 F. Supp. 3d 1101, 1104 (D. Minn. 2015).

First, equitable estoppel may permit a nonsignatory to enforce an arbitration clause if a "signatory's claim references or presumes the existence of the agreement containing the arbitration clause; or the claim involves a close relationship between the signatory and nonsignatory, raising allegations of substantially interdependent and concerted misconduct."  *Adherent Laboratories, Inc. v. DiPietro*, No. A17-1961, 2018 WL

3520843, at *6 (Minn. Ct. App. July 23, 2018) (citation and internal quotation marks omitted).[6]

Second, agency principles "effectuate the intent of the signatory parties to protect individuals acting on behalf of the principal in furtherance of the agreement." *Onvoy*, 669 N.W.2d at 356 (citation omitted). Likewise, the Eighth Circuit has explained that "agency and related principles . . . allow a nonsignatory to compel arbitration when, as a result of the nonsignatory's close relationship with a signatory, a failure to do so would eviscerate the arbitration agreement." *PRM Energy Sys.*, 592 F.3d at 834 (citing *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005)).

---

[6] Courts formulate the test for equitable estoppel theory differently, but these differences appear to be immaterial to the facts of this case. *See, e.g, PRM Energy Sys.*, 592 F.3d at 835 (noting that estoppel theory may apply if the claims are "so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement" or when a signatory alleges "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract"); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d. Cir. 2003) ("[A] willing non-signatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an 'alternative estoppel theory' which takes into consideration the relationships of persons, wrongs and issues[.]" (internal quotation marks and citation omitted)).

Third, third-party beneficiaries may enforce an arbitration clause if the "contracting parties intended the third party to directly benefit from the contract." *Onvoy*, 669 N.W.2d at 356 (citation omitted).[7]

The first two exceptions apply here.  First, Plaintiffs allege that Recovery (a nonsignatory) and Bridgecrest (a signatory) engaged in "substantially interdependent and concerted misconduct" by using a puck to locate and ultimately repossess Kapphahn's vehicle.  *See PRM Energy Sys.*, 592 F.3d at 835 (citation omitted).  Indeed, the Complaint includes a heading titled, "Defendants Bridgecrest **and** [Recovery] Unlawfully Repossessed Plaintiff Kapphahn's Vehicle."  (Compl. at 9 (emphasis added).)  The Complaint also asserts a wrongful repossession claim under Minn. Stat. § 336.9-609 (Count II) alleging that Bridgecrest **and** Recovery breached the peace when they repossessed Kapphahn's vehicle using a puck.  (*Id.* ¶ 108.)  Finally, Kapphahn brings a conversion claim (Count V) against Bridgecrest **and** Recovery for allegedly interfering with her property by unlawfully repossessing her vehicle.  (*Id.* ¶¶ 119–122.)  Taken together,

---

[7] Under Minnesota law, a third party is an intended beneficiary

> if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either: (1) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance (the intent-to-benefit test) or (2) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary (the duty-owed test).

*Michelin Props. LLC v. Jacobson Env't, PLLC*, No. A24-0685, 2025 WL 251713, at *3 (Minn. Ct. App. Jan. 21, 2025) (citation and internal quotation marks omitted).  Recovery does not contend that this exception applies here, and therefore, the Court will not discuss it further.

-19-

Kapphahn alleges substantially interdependent and concerted misconduct by Bridgecrest and Recovery.

Second, Recovery acted as Bridgecrest's agent. (*See* Compl. ¶ 5 (referring to Recovery as a "repossession agent").) Recovery consented to act as Bridgecrest's repossession agent, acted for Bridgecrest's benefit, and was subject to Bridgecrest's control. *See, e.g.*, *A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285, 290–91 (Minn. 1981) (discussing the elements of an agency relationship). Clearly, Plaintiffs' claims against Bridgecrest stem from its agency relationship with Recovery, the entity that carried out the allegedly unlawful repossessions.

In sum, even though Recovery is not a party to the RIC or the Arbitration Agreement, Recovery may compel Kapphahn to arbitrate her claims against it. Recovery served as Bridgecrest's repossession agent, and Plaintiffs allege that Bridgecrest (a signatory) and Recovery (a nonsignatory) engaged in substantially interdependent and concerted misconduct by locating Kapphahn's vehicle with a puck and repossessing it. For these reasons, Recovery may enforce the arbitration agreement as a nonsignatory to the

-20-

Arbitration Agreement.[8]  The Court will, therefore, grant Recovery's motion to compel arbitration and stay proceedings as to Kapphahn's claims against it.

### III.   HARRIS'S CLAIMS

Defendant Recovery also moves to compel arbitration as to the claims brought by Plaintiff Harris.  Plaintiffs argue that Recovery's motion to compel arbitration should be denied because the Arbitration Clause does not cover Harris's claims against Recovery, and because Recovery is not entitled to enforce the arbitration clause as a nonsignatory. It is undisputed that Recovery did not sign Harris's RIC, which includes an arbitration clause.  The Court must therefore first determine whether the RIC covers claims against Recovery.

Unlike Kapphahn's RIC, Harris's RIC contained an "Arbitration Clause."  (Walker Decl. ¶ 6, Ex. A at 6.)  After Harris purchased the vehicle from Cities Auto and Finance,

---

[8] Notably, Section 4 of Kapphahn's arbitration agreement contains a delegation clause: "Any dispute relating to the validity, enforceability, interpretation, or scope of this Agreement, the arbitrability of any Claim, or other gateway issues of arbitrability, or any alleged waiver of this Agreement shall be exclusively resolved by the arbitrator and not by a court."  (Carrillo-Ramirez Decl. ¶ 7, Ex. A at 10.)  A delegation clause is "an agreement to arbitrate threshold issues concerning the arbitration agreement."  *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019) (citation omitted).  Such provisions commit "gateway questions of arbitrability" to the arbitrator.  *Id.*  A delegation clause is "valid and enforceable unless a specific challenge is levied against the delegation provision."  *Id.*  The Eighth Circuit has clarified that determining whether an arbitration clause can be enforced between a signatory and a nonsignatory is a threshold issue of arbitrability. *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014).  Therefore, the question of whether Recovery may enforce the arbitration clause as a nonsignatory under Minnesota law is likely a gateway issue of arbitrability that should be delegated to the arbitrator.

-21-

Cities Auto and Finance assigned it to CAC.  (Compl. ¶ 32; Walker Decl. ¶ 6, Ex. A at 5.) The Arbitration Clause defined "We" and "Us" to "mean Seller [Cities Auto and Finance] and/or Seller's [Cities Auto and Finance's] assignee (including, without limitation, Credit Acceptance Corporation [CAC]) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract **if such third party is named as a party between You and Us**." (Walker Decl. ¶ 6, Ex. A at 6 (emphasis added).)

Although Recovery provided "services in connection with the . . . collection of amounts due under the Contract" (*id.*), Recovery was not named as a party.  By contrast, the RIC names other third-party providers, including First Automotive Service Corporation as an extended warranty provider and Phoenix American Administrator, Inc. as a guaranteed auto protection insurance provider.  (*See* Walker Decl. ¶ 6, Ex. A at 3.)  Yet Recovery appears nowhere in the contract.  Because Recovery was not "named as a party" as required by the Arbitration Clause, Recovery is not covered by the Arbitration Clause's plain language.

But, as previously discussed, the Court's analysis does not end there.  A nonsignatory can enforce an arbitration clause under three theories—equitable estoppel, agency, and third-party beneficiary.[9]  *Onvoy*, 669 N.W.2d at 356.

---

[9] Again, Recovery does not contend that it is a third-party beneficiary to Harris's RIC and thus, the Court will not address the third-party beneficiary exception.

Similar to Kapphahn, the first two exceptions are applicable here. First, for the same reasons Recovery may compel arbitration of Kapphahn's claims, Recovery may also compel arbitration of Harris's claims because Plaintiffs allege that CAC (a signatory) and Recovery (a nonsignatory) engaged in "substantially interdependent and concerted misconduct." *PRM Energy Sys.*, 592 F.3d at 835 (citation omitted). Plaintiffs allege that Recovery used a puck to locate and eventually repossess Harris's vehicle that was subject to a repossession order. (Compl. at 10 ("Defendants and [Recovery] Unlawfully Repossessed Plaintiff Harris' Vehicle").)

Second, even though CAC is not a named Defendant in this lawsuit, Recovery acted as CAC's agent.[10] (*See* Compl. ¶ 5 (referring to Recovery as a "repossession agent").) Recovery consented to act as CAC's repossession agent, acted for CAC's benefit, and was subject to CAC's control. *See Cargill*, 309 N.W.2d at 290–91. Harris's claims against Defendants arise from Recovery's actions as Defendants' agent. (*See* Compl. at 10 ("Defendants and [Recovery] Unlawfully Repossessed Plaintiff Harris' Vehicle").) Therefore, the Court concludes that the agency exception applies. *See Lindsley v. Bramacint, LLC*, Civ. No. 08-1466, 2009 WL 1209464, at *3 (D. Minn. Apr. 30, 2009) (granting a nonsignatories' motion to compel arbitration where the plaintiff sued Chrysler

---

[10] Plaintiffs cannot skirt the equitable estoppel exception by not suing CAC, a signatory. *See Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 611 (5th Cir. 2016) ("[I]ntertwined claims estoppel works to prevent signatories to an arbitration agreement from avoiding arbitration simply by suing 'nonsignatory principals or agents for pulling the strings.'" (quoting *In re Merrill Lynch Trust Co. FSB*, 235 S.W.2d 185, 194 (Tex. 2007)).

Financial's agents, alleging they unlawfully repossessed the plaintiff's vehicle after defaulting on the loan); *Loyola v. Am. Credit Acceptance LLC*, Civ. No. 2:19-00002, 2019 WL 1601362, at *8 (E.D. Wash. April. 15, 2019) (holding that nonsignatory repossessors could enforce the arbitration clause because the plaintiff's FDCPA claims were "based on the same facts" and were "inherently inseparable" from the claims against the lender).

The Court will, therefore, grant Recovery's motion to compel arbitration and stay proceedings as to Harris's claims against it.

## CONCLUSION

Defendant Bridgecrest moved to compel arbitration as to Kapphahn's claims, and Defendant Recovery moved to compel arbitration as to the claims brought by Kapphahn and Harris.[11]

Regarding Plaintiff Kapphahn, the Court will grant both Bridgecrest's and Recovery's motions to compel arbitration and stay proceedings.  The Court concludes Kapphahn's RIC does not violate the MMVRISA.  The Court further concludes Bridgecrest is entitled to compel arbitration as to Kapphahn's claims because Bridgecrest is named in the Arbitration Agreement.  Recovery may also enforce the arbitration agreement as a nonsignatory because Plaintiffs allege that Recovery served as Bridgecrest's agent and Bridgecrest and Recovery engaged in substantially interdependent and concerted misconduct by locating Kapphahn's vehicle with a puck and repossessing it.

---

[11] Stewart's claims are not subject to Defendants' motions to compel arbitration.

-24-

As to Plaintiff Harris, the Court will grant Recovery's motion to compel arbitration and stay proceedings because Recovery has demonstrated that it may enforce the arbitration provision as a nonsignatory.

The Federal Arbitration Act requires courts to stay—rather than dismiss—actions involving arbitrable disputes. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Thus, consistent with Defendants Bridgecrest's and Recovery's motions, the Court will stay proceedings as to Kapphahn and Harris's claims against Bridgecrest and Recovery.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Bridgecrest Acceptance Corporation's Motion to Compel Arbitration and Stay Proceedings (Docket No [39]) is **GRANTED**. This action is hereby **STAYED** with respect to Kapphahn's claims against Bridgecrest until further order of the Court. If Kapphahn wishes to proceed with her claims against Bridgecrest, she shall do so in arbitration.

2. Defendant R.I. Limited Liability Company d/b/a Recovery Industry's Motion to Compel Arbitration and Stay Proceedings (Docket No. [49]) is **GRANTED**. This action is hereby **STAYED** with respect to Kapphahn's claims against Recovery until further order of the Court. If Kapphahn wishes to proceed with her claims against Recovery, she shall do so in arbitration.

-26-

3. Defendant R.I. Limited Liability Company d/b/a Recovery Industry's Motion to Compel Arbitration and Stay Proceedings (Docket No. [44]) is **GRANTED**.  This action is hereby **STAYED** with respect to Harris's claims against Recovery until further order of the Court.  If Harris wishes to proceed with her claims against Recovery, she shall do so in arbitration.

DATED:  March 31, 2026  
at Minneapolis, Minnesota.

_____/s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge